UNITED STATES, Appellee,

v.

Sergeant Thomas E. WALLACE, 235–96–5857, United States Army, Appellant.

ACMR 8903312.

U.S. Army Court of Military Review.

9 July 1991.

For Appellant: Captain Timothy P. Riley, JAGC, Captain Pamela J. Dominisse, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before De GIULIO, NAUGHTON and HAESSIG, Appellate Military Judges.

OPINION OF THE COURT

De GIULIO, Senior Judge:

This case has been referred to this court by the Acting The Judge Advocate General pursuant to Article 69(b), Uniform Code of Military Justice, 10 U.S.C. § 869(b) (1982) [hereinafter UCMJ] for review under the provisions of Article 66, UCMJ, 10 U.S.C. § 866 (1982). This court was directed to consider the following issues:

WHETHER THE ACCUSED'S CONDUCT IN NOT PROVIDING APPROPRIATE CARE FOR HIS CHILDREN CONSTITUTED A CRIMINAL OFFENSE UNDER THE UCMJ.

WHETHER THE SPECIFICATION OF CHARGE II STATES AN OFFENSE, MORE SPECIFICALLY, WHETHER IT INCLUDES NECESSARY WORDS OF CRIMINALITY, AND WHETHER IT ALLEGES ACTS THAT ARE SERVICE–DISCREDITING.

WHETHER THE EVIDENCE OF THE ACCUSED'S CONDUCT AND THE OTHER FACTUAL CIRCUMSTANCES WAS LEGALLY SUFFICIENT TO SUSTAIN ACCUSED'S CONVICTION FOR CHILD NEGLECT AS SERVICE–DISCREDITING CONDUCT.

We answer the first issue in the negative and reverse.

Appellant was tried by a military judge sitting as a special court-martial in the Federal Republic of Germany. Contrary to his pleas, appellant was convicted of child neglect in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1982).[1] He was sentenced to forfeit $100.00 pay per month for five months. The convening authority approved the sentence.

While appellant's wife, who is also a soldier, was away at a military school, appellant was caring for the children, Richard, age seven; Jennifer, age six; and Tommy, age one. On 16 July 1989, appellant and several friends were drinking beer at his quarters. After his friends departed at about 2200 hours, appellant decided he needed money and left the children alone while he searched for an automatic teller machine. He left Richard in charge of watching the two younger children. Before he departed, appellant instructed the children not to answer the telephone.

Appellant was unable to withdraw money from several automatic teller machines. Eventually at Panzer Barracks, he met a friend who was going on emergency leave and needed a ride to the airport. Appellant took his friend to the airport. While waiting for his friend to depart, they drank several beers. Appellant returned to his quarters at 0230 hours.

Meanwhile, appellant's wife telephoned the house and talked to Jennifer. She was concerned that there was no adult at the house so she called the Charge of Quarters (CQ) of her unit. She asked the CQ to contact Sergeant (SGT) M, a neighbor, and ask him to pick up the children and care for them for the night. SGT M went to appellant's quarters. The door was locked. Jennifer was crying and Tommy was whimpering. Richard, the oldest child, was asleep in the bedroom. Jennifer had trouble finding the key but after fifteen minutes, opened the door. SGT M took the children to his quarters. Later, he called the military police who took the children to the hospital in accordance with their policy. Examination failed to reveal injury to the children. SGT M, who has a masters degree in counseling and had been on call at the community counseling center for reports of child abuse, spouse abuse, and child neglect, testified that he did not find any signs of neglect in appellant's quarters. He knew Richard to be pretty mature for his age and protective of the younger children. He also testified that the incident had no traumatic effect on the children.

Appellant told the military police that he did not obtain a baby-sitter because he and

1. The specification for which appellant was tried alleged that:

[Appellant] did, at Robinson Barracks, The Federal Republic of Germany, on 16 July 1989, violate his duties of care to his then seven-year old step-son, Richard ..., then four-year old step-daughter, Jennifer ..., and then one-year old son Thomas ..., by locking the aforementioned children within the family quarters without providing for any responsible supervision or care for the aforementioned children, and then absenting himself from the locked quarters for a continuous period in excess of four hours before returning to the quarters, such conduct being of a nature to bring discredit upon the armed forces.

He was found guilty by exceptions and substitutions of the following:

[Appellant] did, at Robinson Barracks, The Federal Republic of Germany, on 16 July 1989, violate his duties of care to his then seven-year old step-son, Richard, his about six-year old daughter Jennifer, and his one-year old son Thomas, by locking the children in government quarters at 2000 hours without training them how to unlock the door in case of an emergency and without providing any responsible care for those children for approximately two and one-half hours.

his wife let Richard watch over the children when they left the house for short periods of time.

■ Essentially, this court has been asked to determine if child neglect is a criminal offense in the military under the General Article, Article 134, UCMJ, 10 U.S.C. § 934, as conduct of a nature to bring discredit upon the Armed Forces. A review of military case law provides little guidance in this area. In *United States v. Irvin,* 21 M.J. 184 (C.M.A.1986), an airman was found guilty, *inter alia,* of assault on a child over a period of time and child abuse over the same period. The child abuse was charged, however, under the Assimilative Crimes Act, 18 U.S.C. § 13, incorporating a state statute into Article 134, UCMJ. The Court of Military Appeals held that the government failed to establish exclusive or concurrent jurisdiction of the United States over the area where the crime was committed. Chief Judge Everett stated, "Certainly Irvin's conduct, as alleged in the child abuse charge, could properly be considered service discrediting." *Id.* at 190. The case was returned for the Air Force Court of Military Review to determine if the alleged child abuse was part of the other offenses. Finding that the alleged child abuse merged with the other offense, the Air Force Court of Military Review set aside and dismissed the child abuse charge and specification and reassessed the sentence. *United States v. Irvin,* 22 M.J. 559 (A.F.C.M.R.1986). For our purposes, this case is of little help since it involves assaults, acts which are clearly crimes under other provisions of the code. It does not specifically address the question of whether child neglect is an offense under Article 134 as service discrediting conduct.

In an unreported case, the Air Force Court of Military Review boldly concluded that the offense of child neglect was viable under clause 2 of Article 134, conduct of a discreditable nature. *United States v. Foreman,* ACM 28008, 1990 WL 79309 (A.F.C.M.R. 25 May 1990). That court did not, however, provide the benefit of their reasoning in arriving at the conclusion. In that case, the airman was charged with child neglect for use of cocaine during the month prior to her daughter's birth; failing to bathe and to change the diaper of her newborn daughter often enough, leading to severe diaper rash and a dandruff-like scalp condition; and failure to clean her government quarters to such a degree that the health of her children was endangered. The Air Force court found that prenatal drug use could not be the subject of criminal neglect, absent specific statutory authority, particularly where their was no discernible injury caused by the neglect. That court found the providence inquiry failed in specificity as to attending to the daughter's hygiene. Further, the court found that the evidence failed to show that poor housekeeping practices had risen to the level of criminality under Article 134 as conduct of a nature to bring discredit on the Armed Forces. In the "interest of judicial economy" the court set aside the child neglect specifications and reassessed the sentence.

The few cases indicate the potential dark morass in which courts may fall should child neglect be recognized as an offense under Article 134. It has been said that, "In crimes based upon negligence, the accused must be guilty of negligence and the casualty must result from the negligence." *United States v. Day,* 23 C.M.R. 651, 655 (N.M.C.M.R.1957). In the case before us, as in the prenatal drug use specification of *Foreman,* there was no apparent harm to the children caused by leaving them in the quarters. Although child neglect is an offense in most states, it generally is directed at neglect to support. *See generally* 67A C.J.S. *Parent and Child* §§ 165, 166 (1978). Universal standards for liability for child neglect have not been devised. 3 Am.Jur. Proof of Facts 2d *Child Neglect* § 18 (1974). Consequently, it would be difficult to define such an offense, even under Article 134.

■ Article 134 "is not such a catchall as to make every irregular, mischievous, or improper act a court-martial offense." *United States v. Sadinsky,* 34 C.M.R. 343 (C.M.A.1964). No person can be held crimi-

nally responsible for conduct which he could not reasonably understand to be prohibited. *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Notice that conduct is in violation of Article 134 is a constitutional prerequisite to prosecution. *United States v. Johanns*, 20 M.J. 155 (C.M.A.) *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). We doubt that appellant was on notice that his conduct was a criminal offense.

 Absent a statute or a punitive regulatory provision,[2] this court declines to enter the morass which would be created by holding that child neglect, standing alone, constitutes an offense under Article 134, UCMJ. We believe conduct which results in injury to children can be charged under existing punitive provisions of the Uniform Code of Military Justice.[3] Otherwise, incidents of child neglect should be processed administratively under the Army Family Advocacy programs.

The first question referred to this court is answered in the negative. Having done so, we need not address the remaining questions.

The findings of guilty and the sentence are set aside. The charge and its specification are dismissed.

Judge NAUGHTON and Judge HAESSIG concur.

---

**2.** Army Regulation 608–18, Personal Affairs: The Army Family Advocacy Program, para. 3–7e (18 Sep. 1987) provides, in part, "Except as otherwise defined by applicable law, a finding of neglect is usually appropriate in a situation where a child, under the age of 9, is left unattended (or left attended by a child under the age of 12) for an inappropriate period of time. A finding of neglect is also appropriate when a child, regardless of age, is left under circumstances involving potential or actual risk to the child's health or safety." It is noted that this provision is not punitive and is vague as to periods of time and potential risk of harm. It is also noted that the same paragraph discussed "dental neglect." This paragraph is part of the paragraph titled "Indication of Child Abuse." Paragraph 3–5 of the regulation tells us that, "The indicators of abuse are not concrete evidence of abuse." This is simply an example of the vagueness of the subject of child neglect.

**3.** *See, e.g., United States v. Alexander*, 18 M.J. 84 (C.M.A.1984) (accused found guilty of involuntary manslaughter resulting from bronchial pneumonia induced by child neglect.)