UNITED STATES, Appellee,

v.

Sergeant Jose M. MARTINEZ, United
States Army, Appellant.

ARMY 9501957.

U.S. Army Court of Criminal Appeals.

29 May 1998.

For Appellant: Colonel John T. Phelps II,
JA; Major Leslie A. Nepper, JA; Lieutenant
Colonel Michael L. Walters, JA; Captain

John M. Head, JA (on brief); Captain Patricia A. Lewis, JA.

For Appellee: Colonel Joseph E. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA; Major Lyle D. Jentzer, JA (on brief).

Before GORDON, Senior Judge, JOHNSTON and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Contrary to his pleas, appellant was convicted of being an accessory after the fact (to assault on a child under the age of sixteen years), involuntary manslaughter, misprision of a felony (aggravated assault), and child neglect to the discredit of the armed forces, in violation of Articles 78, 119, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 878, 919, and 934 (1988) [hereinafter UCMJ]. His approved sentence included a dishonorable discharge, confinement for thirteen years, forfeiture of $854.00 pay per month for 156 months, and reduction to Private E1.

On appeal, appellant claims that his convictions for involuntary manslaughter, accessory after the fact, and misprision of a felony are legally and factually insufficient. He also argues that the specification alleging child neglect as service discrediting misconduct fails to state an offense, and he makes several assertions of multiplicity for findings. Through various concessions, the government urges dismissal of all charges and specifications other than that alleging involuntary manslaughter, and calls for reassessment of the sentence to provide for confinement for ten years (which would be the new maximum period of confinement) and the same amount of forfeitures for 120 months.

We accept as appropriate only the government's concession concerning dismissal of the child neglect[1] and misprision specifications. *See United States v. Taylor*, 47 M.J. 322, 328 (1997) (Crawford, J., dissenting) (citing *United States v. Emmons*, 31 M.J. 108, 110 (C.M.A.1990); *United States v. Hand*, 11 M.J. 321 (C.M.A.1981); *United States v. Wille*, 9 U.S.C.M.A. 623, 627, 26 C.M.R. 403, 407, 1958 WL 3392 (1958)). We reject appellant's remaining claims of legal and factual insufficiency and multiplicity.

### Facts

Appellant's son, N, was the second child born to his wife as the product of separate adulterous affairs that occurred while appellant was twice deployed overseas. The first child was given up for adoption. N was born on 4 October 1993, put up for adoption at the insistence of appellant, but later retrieved by his mother. Appellant concealed N's status by claiming that N was his wife's nephew. He never enrolled N as a dependent within the military benefits system. N died on 4 February 1995, primarily due to neglect and severe physical abuse at the hands of his mother and appellant's failure to act.

This abuse occurred over the span of at least four months, was progressive in its severity, and produced bruises on N's body literally from head to foot. The repeated "lumps" on N's head, as well as other physical signs, were noticed and commented on by relatives, with little evidence of concern on appellant's part. He admitted that he was aware of this evidence of injury to N; that he confronted his wife about these injuries; that he did not believe his wife's explanations, which made him "mad" at her; but that he otherwise did absolutely nothing about the situation.

The worst of the abuse apparently occurred about a week before N died. Among other acts, Mrs. Martinez admitted to losing control, hitting N, and slamming his head into the wall of the bedroom N shared with his three sisters. This act occurred on 2 February and was done with sufficient force that two large, round indentations were made in the wallboard.

About this time, N began to exhibit signs of physical distress. On 3 February, while taking care of N, appellant noticed that he

---

1. Appellant urges dismissal on the basis of prior precedent of this court. *See United States v. Wallace*, 33 M.J. 561 (A.C.M.R.1991). The government's brief cites unreasonable multiplication of charges, but indirectly joins appellant through citation to *United States v. Valdez*, 35 M.J. 555, 564 (A.C.M.R.1992). *See also* Rule for Courts–Martial 307(c)(4) discussion [hereinafter R.C.M.].

was listless and had a fever. His sister, O, had also developed a fever and was taken to the hospital by Mrs. Martinez that evening. However, both appellant and his wife consciously decided not to seek similar medical attention for N. He died about six hours later. The autopsy indicated that he bled to death over the course of several days due to a blunt force, traumatic rupture of blood vessels connected to his digestive tract.

### Law and Analysis

■ Concerning claims of legal insufficiency, our test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Our standard for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

■ To sustain a conviction for involuntary manslaughter, the proof must establish that appellant's (a) unlawful act or omission (b) amounted to culpable negligence and (c) was the proximate cause of (d) the death of N. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.), Part IV, para. 44b(2) [hereinafter MCM, 1995]. The conviction for acting as an accessory after the fact required proof that appellant: (a) knew that his wife committed an offense that (b) was punishable under the UCMJ and thereafter, (c) provided her assistance or comfort (d) designed to hinder or prevent her being brought to justice. *See* MCM, 1995, Part IV, para. 2b.

■ In a prosecution for accessory after the fact, "[t]he principal who committed the offense in question need not be subject to [prosecution under] the code, but the offense committed must be punishable by the code." MCM, 1995, Part IV, para. 2c(4). Here, the focal offense attributed to appellant's wife, assault and battery on a child under sixteen years of age, is prohibited under Article 128, UCMJ.

■ We believe that the evidence in this case overwhelmingly established that appellant, through either *design* or culpable negligence, failed in his duty as N's father to honor the "inherent dependency of a child upon his parent"[2] for care and medical aid. *United States v. Robertson*, 37 M.J. 432, 440 (C.M.A.1993) (Gierke, J., concurring). This failure to exercise "that degree of care for his son which a reasonably prudent parent would have exercised under the same or similar circumstances" caused N's death. *Robertson*, 37 M.J. at 438; *United States v. Valdez*, 35 M.J. 555 (A.C.M.R 1992). Accordingly, his conviction for involuntary manslaughter is both legally and factually sufficient.

■ Concerning appellant's conviction as an accessory after the fact, the evidence clearly established that appellant admitted to being aware of his wife's brutalization of the sixteen-month-old child living in his home. Further, we find that the indentations in the wall of the room N shared with his siblings provide sufficient circumstantial evidence to conclude that appellant was also aware of the magnitude of these crimes and that immediate, protective action was necessary.

Nevertheless, appellant elected to forego having N taken to the hospital with O. This decision, regardless of the other possible mo-

---

2. Appellant's familial status to N and thus the source of his legal duty to N, was not clearly defined by the prosecution. Nevertheless, appellant had an indisputable duty to protect and care for N. Appellant testified that he considered himself to be N's parent and to have the responsibilities toward him associated with being a parent. Under traditional family law concepts and Tennessee law, a child born during the pendency of a marriage is deemed to be the natural child of the father. *See* HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES §§ 5.1, 5.3 (1968); Tenn.Code. Ann. § 36–1–

12(26)(B)(1997). Furthermore, appellant would qualify as a stepparent per Black's definition or as an "other person" responsible for a child as defined by the Model Penal Code. *See* BLACK's LAW DICTIONARY 1114 LAW DICTIONARY 1114 (6th ed.1990); Model Penal Code § 3.08(1) (American Law Institute 1985) (cited in Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 5–16 (30 Sep. 1996)). Thus, under a variety of legal theories, all supported by the record and applicable legal authority, appellant had a legal duty to N, which he violated, rendering him criminally liable for the death of the child.

tives, effectively served to preclude discovery of Mrs. Martinez' crimes. Under such circumstances, we are satisfied that appellant's conviction as an accessory after the fact is both legally and factually sufficient.[3]

We also reject appellant's claim that his convictions under both Articles 78 and 119, UCMJ, were multiplicious for findings. *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993). *Cf.* MCM, 1995, Part IV, para. 2c(6). Similarly, we find no basis on this record to conclude that appellant has been subjected to an *unreasonable* multiplication of charges. *See* R.C.M. 307(c)(4) discussion. Accordingly, we are satisfied that appellant stands properly convicted of both involuntary manslaughter and being an accessory after the fact to his wife's crime of beating N.

We have reviewed those assignments of error personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty of Specifications 1 and 2 of Charge II are set aside and that Charge and its Specifications are dismissed. The remaining findings of guilty are affirmed.

Our determination that Charge II and its Specifications be set aside has the effect of reducing the maximum permissible confinement for appellant's crimes from thirteen to eleven years. However, we are satisfied that we can properly determine an appropriate sentence for appellant in light of the principles set forth in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), and the fact that the court-martial adjudged a maximum sentence except for forfeitures. Reassessing the sentence on the basis of the errors noted, the nature of the crimes, and the entire record, the court affirms only so much of the sentence as provides for a dishonorable dis-

charge, confinement for eleven years, forfeiture of $854.00 pay per month for 132 months, and reduction to E1.

---

3. We note that there is a close relationship between the acts making appellant an accessory after the fact and his breach of duty which supports the involuntary manslaughter. The offenses, however, are separate. Appellant is not an accessory after the fact to his own conduct. First, the act (e.g., breach of duty) creating culpable negligence for the Article 119, UCMJ, offense, is not the same act which supports the Article 78, UCMJ, violation. It merely provides

circumstantial evidence of his intent or purpose, thereby going to element four of Article 78. MCM, 1995, para. 2b(4).

Second, the acts being covered—and for which the purpose of preventing apprehension, trial, or punishment went to—were solely the wife's acts, known to appellant, but for which he is not a principal as defined by Article 77(2), UCMJ. Thus, at the time he breached his duty to N, he was hiding prior acts of his wife.